**FRIGITEMP CORP. et al.,**
**Plaintiffs-Appellants,**

**v.**

**FINANCIAL DYNAMICS FUND, INC.,**
**et al., Defendants-Appellees.**

**No. 963, Docket 75–7030.**

United States Court of Appeals,
Second Circuit.

Argued June 18, 1975.

Decided Oct. 14, 1975.

276

Gerald D. Fischer, New York City (Blackman, Lefrak, Feld & Fischer and Lloyd D. Feld, New York City, of counsel), for plaintiffs-appellants.

Michael C. Devine, New York City (Butowsky, Schwenke & Devine, New York City, of counsel), for defendants-appellees Financial Dynamics Fund, Inc., Financial Industrial Fund, Inc. and Financial Venture Fund, Inc.

Barry H. Garfinkel, New York City (Skadden, Arps, Slate, Meagher & Flom, New York City, and Ireland, Stapelton, Pryor & Holmes, P. C., Denver, Colo., of counsel), for defendants-appellees Financial Programs, Inc., Robert E. Anton and John M. Butler.

Before GIBBONS,* GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Charles H. Tenney, *Judge,* dismissing the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiff Frigitemp Corp. (Frigitemp) is a New York corporation. The four individual plaintiffs, Gerald Lee, Gerald Ross, Henry Gutman and Leon Guttman were stockholders of Frigitemp. Defendants Financial Dynamics Fund, Inc. (FDF), Financial Industrial Fund, Inc. (FIF) and Financial Venture Fund, Inc. (FVF) (collectively called "the Funds") are publicly owned, open end investment companies, commonly known as mutual funds, located in Colorado. They are managed by defendant Financial Programs, Inc. The individual defendants named in the complaint, Robert Anton and John M. Butler, were officers and employees of the defendant corporations. Jurisdiction is asserted on diversity of citizenship, 28 U.S.C. § 1332, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v.

The essential facts pleaded, which we must take to be true are as follows. Frigitemp had an initial public offering in January 1969. The individual appellants' owned more than a majority of the outstanding shares of common stock after the offering. On August 29, 1969, FVF purchased from Frigitemp in a private placement $1,000,000 principal amount of a 5% convertible subordinated debenture due 1984 and warrants to purchase 50,000 shares of Frigitemp's common stock until September 12, 1972 at prices between $17 and $19 per share, for one million dollars. In negotiating for the private placement the defendants allegedly received "material, confidential and 'inside' information concerning the business and affairs of Frigitemp."

As a condition of the private placement, the individual plaintiffs were required by the purchaser of the debenture to contribute 100,000 shares of common stock to the capital of Frigitemp.

By the time of the private placement, the three Funds had already purchased a substantial number of Frigitemp shares on the over-the-counter market but failed to disclose that fact to the plaintiffs. The Funds continued to buy shares in the over-the-counter market thereafter without having disclosed their intention to do so. Between March 1969 and March 1970, the three Funds bought an aggregate of 142,100 shares of Frigitemp common stock on the market, thus acquiring all but a small part of the shares in public hands. As a result of the purchases by the Funds the market price of Frigitemp common rose from $15.25 to $37 per share.

In February and March 1970, FVF and FDF sold about 18,000 shares for a profit of $130,000, allegedly on the basis of the "inside" information they received before August 29, 1969. In 1971 the Funds sold the balance, about 123,000 shares, and "depressed the price of the stock to $8 per share, thereby causing substantial damages to the remaining shareholders of Frigitemp."[1]

---

* Of the U.S. Court of Appeals for the Third Circuit, sitting by designation.

1. We need not accept the legal conclusion of the complaint that the appellees "manipulated" the stock, for massive buying for investment need not be synonymous with unlawful manipulation. Since the appellees apparently bought almost all the shares that were theoretically available, they were presumably the only major buyers. When they decided to sell at the high price they themselves had created, they simply came up against the proverbial question: "Sell to whom?"

It is also alleged that a class action has been brought against two of the individual appellants and Frigitemp by persons who purchased Frigitemp stock and incurred losses. This complaint alleges that these losses were the direct result of the appellees' "misuse of . . . 'inside' information" and their "wrongful manipulation of the market price of the common stock of Frigitemp." There is no allegation, however, setting forth any fact supporting the charge of "manipulation." See Fed.R.Civ.P. 9(b). All that is alleged is that large purchases were made. We treat the gravamen of the complaint as the alleged use of confidential information and the making of large purchases by the Funds without disclosure of this fact to appellants.

The essence of the complaint is that the defendants failed to disclose, when negotiating the private placement and the condition that the individual appellants contribute 100,000 shares to the capital of Frigitemp, that they already owned a substantial amount of Frigitemp common and intended to purchase most of the public float on the basis of the "inside" information they were receiving.

There is no allegation that Frigitemp would not have sold the debenture if it had known these "facts." There is an allegation, however, that the individual appellants would not have contributed their 100,000 shares if they had known.

Four claims for relief are stated, two on behalf of Frigitemp, and two on behalf of the individual appellants. Judge Tenney dismissed all the claims. We affirm.

### Claim # 1

Frigitemp seeks to recover a profit of $130,000 which defendants realized from the purchase and sale of Frigitemp common on the theory that under the facts alleged the defendants committed common law fraud and deceit. Judge Tenney dismissed the Frigitemp common

law claim on the ground that Frigitemp was not a defrauded party. Appellants contend that Frigitemp, as a corporate entity, may recover profits made by the defendants through their trading in its shares on the basis of confidential and inside information freely given to the defendants during the negotiations for the purchase of the $1,000,000 debenture. Appellant founds its claim upon the theory that the appellees breached a "duty of trust owed to it."

■ Frigitemp relies upon *Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), for its theory of common law fiduciary duty. There the New York Court of Appeals did sustain a complaint by a corporation seeking recovery from its officers and directors of profits derived from the use of corporate inside information, without an allegation that the corporation was itself damaged. But the theory of the *Oreamuno* case was that there had been a breach of a fiduciary duty, the officers and directors being treated as agents or trustees. On familiar principles of equity a fiduciary may be required to account to his *cestui* for profits made through his use of confidential information belonging to the cestui. See *Byrne v. Barrett,* 268 N.Y. 199, 197 N.E. 217 (1935); *Restatement (Second) of Agency* § 388, comment *c* (1958). Chief Judge Fuld made this clear by analogizing the suit in *Oreamuno* to the federal statutory remedy of Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b), 24 N.Y.2d at 500–01, 301 N.Y.S.2d at 82–84, 248 N.E.2d at 913–14, which is based on breach of fiduciary duty. See *American Standard, Inc. v. Crane Co.,* 510 F.2d 1043, 1060–61 (2 Cir. 1974).

The appellees here were never officers or directors or even employees of Frigitemp.[2] See *Brophy v. Cities Service Co.,* 31 Del.Ch. 241, 70 A.2d 5 (1949) (sustaining a derivative suit seeking to recover from an employee of a corporation the

---

**2.** There is also no allegation that the defendants, or any of them, were controlling stockholders at the time they acquired the inside information.

profits he allegedly made through use of confidential information).

■ In contending that the *Oreamuno* case supports recovery even against persons not in the corporate employ appellant cites *Schein v. Chasen,* 478 F.2d 817 (2 Cir. 1973), *vacated on other grounds,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). The majority of the panel there went no further than to hold, against the vigorous dissent of Judge (now Chief Judge) Irving R. Kaufman, that a co-venturer of the director who breaches his duty may be "subject to the same liabilities as those of the director himself for the misuse of corporate information." 478 F.2d at 822.[3] The predicate for liability was the breach of a fiduciary duty to the corporation. Thus, an underwriter who manages a public distribution of a corporation's shares is a fiduciary of the corporation and may not profit from corporate information obtained in its capacity as underwriter. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264 (S.D.N.Y. 1972), *aff'd,* 495 F.2d 228 (2 Cir. 1974).[4]

■ The authorities cited by appellant do not go beyond breaches of fiduciary duty. There is no reason to believe that the state courts of New York are likely to go further.

The information supplied by Frigitemp was information that Frigitemp, which was not in registration, was required to disclose to a person about to lend it $1,000,000, or, in the language of securities law, about to buy its debenture. Given the duty to disclose and the need for the loan, the corporate officer who gave the information in order to get the loan was not violating his fiduciary duty. Nor was the buyer of the debenture culpable as a co-venturer of a faithless trustee. The dealings were at arm's length. The corporate officer had the right to make the inside information available. The other party had the right to request it. We need not determine whether the buyer owed a duty to market traders to refrain from buying or selling the shares of Frigitemp based on such information, since such persons are not plaintiffs in this action. Our inquiry is limited to whether the corporation, the seller of the debenture, has a claim for relief.

■ We hold merely that appellees were under no fiduciary duty to the corporation under New York law by virtue of their status as potential purchasers of its debenture. We need not consider the hypothetical case where the purported buyer of a debenture was not negotiating for its purchase in good faith but was using the negotiations merely as a device for obtaining confidential information. Here the buyer actually paid $1,000,000 for the debenture.

### Claim # 2

■ Frigitemp's second claim is brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, and under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). The claim is that appellees, at the time of the private placement, failed to disclose to Frigitemp that the Funds had purchased substantial

---

3. Upon certification to it of the question presented, the Florida Supreme Court adopted Judge Kaufman's dissent and refused to adopt the Second Circuit majority's expansion of *Oreamuno* as the law of Florida. *Schein v. Chasen,* 313 So.2d 739 (Fla.1975).

4. In *Shapiro* there were tippees who received the inside information from Merrill Lynch and traded upon it. They were being sued by persons who purchased stock in the open market during the period when the tippees were selling. *Shapiro* was not a derivative suit on behalf of Douglas, the company whose stock was involved. In *SEC v. Texas Gulf Sulphur Co.,*

446 F.2d 1301 (2 Cir. 1971), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1972), the corporation was, to be sure, made the conditional beneficiary of the trust fund set up for restitution by the corporate employees who traded on the inside information or passed on tips to do so. But again the wrongdoers were in a fiduciary relation to the corporation, and, as was said in *Oreamuno,* a corporation may suffer harm "when *officers and directors* abuse their position to obtain personal profits" —since "the effect may be to cast a cloud on the corporation's name." See 446 F.2d at 1308.

amounts of Frigitemp's shares and would purchase up to 74% of the stock publicly available, using the confidential information obtained. Coupled with this is the claim that appellees failed to disclose that the contribution of 100,000 shares to capital by its controlling shareholders would redound to the benefit of the Funds by increasing the earnings and book value per share. It is contended that these failures to disclose constituted violations of § 10(b) and Rule 10b–5, as well as Section 17(a) of the Securities Act of 1933. We need not consider Section 17(a) since appellant was not a defrauded purchaser.

Appellees sought dismissal of Claim # 2 upon two grounds: (1) that Frigitemp had no standing to sue since it was neither a seller nor a purchaser of securities; and (2) that appellant had failed to allege actual damage to Frigitemp. The District Court dismissed the claim on the first ground. It held that Frigitemp had no standing to sue under 10(b) and 10b–5, since Frigitemp was not a purchaser or a seller of its securities during the period from March 1969 through March 1970 when the Funds were allegedly purchasing large quantities of Frigitemp common stock on the open market. It also held inferentially that the sale by Frigitemp of its debenture did not make it a "seller of securities" despite the appellants' argument to the contrary based upon *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

On the question of standing, we now have to realign our sights on the meaning of the *Birnbaum* rule, *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2 Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), in view of the decisions of the Supreme Court in the *Bankers Life* case and, more recently, in *Blue Chip Stamps v. Manor Drug*

*Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

This court has interpreted *Bankers Life* to mean that the *Birnbaum* rule remained intact, noting that *Bankers Life* "in no way suggested a rejection of the rule that a plaintiff under Section 10(b) must be a party to the sales transaction." *Haberman v. Murchison,* 468 F.2d 1305, 1311 n. 5 (2 Cir. 1972). In *Blue Chip Stamps,* the Supreme Court held than an offeree who *failed* to buy the stock offered because of an allegedly fraudulent prospectus had no standing to sue under 10(b) and 10b–5 since he was neither a purchaser nor a seller. It did not analyze the *Bankers Life* opinion except to approve the gloss put upon it by the Second Circuit in *Haberman v. Murchison.* 421 U.S. at 732, 95 S.Ct. at 1923. We are, accordingly, left with a reaffirmation of the *Birnbaum* doctrine but with the limitation that the phrase "in connection with the purchase or sale of any security" may apply to a security different from the security whose sale *originated* the fraudulent scheme.[5] In this case, the fraud alleged is misrepresentation by the purchaser of the debenture in failing to state certain allegedly material facts to the seller, Frigitemp.

It should not matter that the subsequent activity complained of was "manipulation" of Frigitemp's common stock on the market rather than activity relating to the debenture itself. If Frigitemp could spell out the essential elements of a § 10(b) claim, we think it would have standing to assert it. The difficulty is that we find no such valid claim.

Appellant seeks to have us hold that there is a duty on the purchaser from a corporation of a convertible debenture with warrants to disclose that he is already or intends to become a shareholder. In the absence of an intent to gain control of a corporation and to loot it, there is hardly any reason why the cor-

---

**5.** See *Superintendent of Insurance v. Bankers Life & Cas. Co., supra,* 404 U.S. at 13 n. 10, 92 S.Ct. at 169 n. 10. There it was not the sale of the stock of Manhattan that was held to be the sale under the *Birnbaum* rule, but only the *subsequent* sale of the bonds by Manhattan.

poration, as an entity, should be interested in the personality of its shareholders. There is no allegation that the appellees ever sought to gain control of the corporate offices.

Frigitemp needed money. One of the appellants was ready to supply it. The purchaser obviously was entitled to all relevant information. Even assuming that a million dollar loan could conceivably be only a ploy for getting information on which to speculate in the shares of a small company on the market, Frigitemp itself suffered no monetary loss. To recognize a corporate loss in image or prestige without monetary loss as a basis for liability would extend § 10(b) beyond its farthest reach.[6] Though the sale of the debenture may have given Frigitemp technical standing as a seller, it has no actionable claim under the 1934 Act.

Nor can we see a § 10(b) violation in the debenture purchaser's "requirement" that the controlling stockholders contribute 100,000 of their common shares to capital without disclosure that it intended to buy up as many shares as were available on the market. The request for the contribution to capital was normal, since the earnings and book value per share inuring to the benefit of the holder of the convertible debenture upon conversion and exercise of the warrants, would be proportionately higher as a result of the contribution. That, in any event, would not directly affect Frigitemp *as a corporation.* See *Haberman v. Murchison, supra,* 468 F.2d at 1312. Claim # 2 was properly dismissed.

### Claim # 3

The claim by the individual appellants that the appellees had violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder arises out of the debenture purchase transaction, as part of which these appellants contributed 100,000 shares of stock gratis to the capital of the corporation. We need not consider § 17(a) because appellants were obviously not purchasers. The complaint may be read to allege that the defendants, at the time they suggested the contribution to capital by the plaintiffs, were engaged in a plan to use inside information and to buy Frigitemp shares in such volume as to "artificially increase the market price," without revealing their intention to the plaintiffs. This is said to be actionable by the individual appellants as a violation of § 10(b) of the 1934 Act because the defendants withheld from the plaintiffs material information that would have been of importance to them in making their decision to contribute the 100,000 shares to the corporation.

The defendants assert two main grounds for upholding the dismissal of the complaint. First, they contend that the plaintiffs have no standing to sue for a violation of § 10(b) because their contribution of shares was not a "sale" within the *Birnbaum* doctrine. Second, they contend that on the facts alleged there was no violation of § 10(b). Judge Tenney properly held that the plaintiffs had standing, relying on our recent decision in *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1343–46 (2 Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). There we held that the mere absence of consideration in a stock disposition does not necessarily prevent the transaction from being a "sale" for § 10(b) purposes. The contribution of shares without direct consideration flowing to the contributors may be deemed a "sale" for § 10(b) purposes, particularly since consideration flowed to the corporation in the form of a million dollar debenture purchase.[7] As the

---

6. Speaking generally, a rise or fall in the market price of the corporate shares does not make the corporation richer or poorer, except to the extent that it may make it harder to raise fresh equity capital if its shares have been on the downslide or a merger is in the offing. See *GAF Corp. v. Milstein,* 453 F.2d 709, 722 n. 27 (2 Cir. 1971).

7. A commentator has opined that "[w]hen the plaintiff is defrauded into making a gift, his injury is clear." 5 A. Jacobs, *The Impact of Rule 10b–5,* § 38.02[b], at 2–48 n. 3 (1974).

Court stated in *SEC v. National Securities, Inc.*, 393 U.S. 453, 467, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969), in concluding that an exchange of stock in a merger constituted a "purchase" of stock for purposes of § 10(b) and Rule 10b–5: "The broad antifraud purposes of the statute and the rule would clearly be furthered by their application to this type of situation." The case is unusual, nevertheless, in that it involves the performance of related acts both by Frigitemp *and* by its principal shareholders. It is also unusual because it is not the garden variety case where the insider is sued by the outsider. Here it is the insider who is suing the outsider.

The hard question for appellants is whether any omission by the defendants or any activity they engaged in constituted a violation of § 10(b) to the damage of the plaintiffs. Frigitemp sold a convertible debenture and the plaintiff shareholders gave up shares in the belief that the financial structure of the corporate entity would be strengthened. The defendants did nothing to induce that belief, the truth of which was peculiarly within the knowledge of the appellants. The appellants contend, nevertheless, that they are entitled to damages for having contributed their shares because the appellees allegedly failed to disclose material facts.

■ As Judge Tenney noted, the purchases of Frigitemp shares by the Funds in substantial amounts were not concealed. The appellants discovered from a perusal of available transfer sheets much later what they could have discovered at the time—that the Funds had purchased a large number of shares. Since the appellees had a right to assume that the volume of their purchases was known to appellants, there was no reason for them to disclose the fact. *Hafner v. Forest Laboratories, Inc.*, 345 F.2d 167 (2 Cir. 1965); see *Arber v. Essex Wire Corp.*, 490 F.2d 414, 420 (6 Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974); *Johnson v.*

*Wiggs*, 443 F.2d 803, 806 (5 Cir. 1971); *Kohler v. Kohler Co.*, 319 F.2d 634, 640–41 (7 Cir. 1963). And see *Myzel v. Fields*, 386 F.2d 718, 736 (8 Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Bromberg states, perhaps too broadly, that "[t]here is widespread agreement among the courts that constructive knowledge of truth or omitted information will bar plaintiff from 10b–5 recovery." 2 A. Bromberg, *Securities Law: Fraud—SEC Rule 10b–5*, § 8.4(652), at 204.248 (1974). Even at common law, if the plaintiff has been furnished with the means of knowledge and he is not prevented from using them he cannot say that he has been deceived by the misrepresentations of the other party. See *Shappirio v. Goldberg*, 192 U.S. 232, 241–42, 24 S.Ct. 259, 48 L.Ed. 419 (1904).

Whether "constructive knowledge," or "ready access to the information involved," *City National Bank v. Vanderboom*, 422 F.2d 221, 231 (8 Cir. 1970), is always a bar to the *plaintiff* we need not decide. Suffice it to say that even if we lower the requirement of scienter on the part of the *defendant*, see discussion in *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2 Cir. 1973) (en banc), his reasonable belief that the other party already has access to the facts should excuse him from new disclosures which reasonably appear to be repetitive.

■ Indeed, if appellees reasonably assumed that appellants already knew that the Funds had been active purchasers of Frigitemp stock, appellees were under no obligation to disclose their intention to continue the same course of conduct in the future. Though in some situations buyers are required to disclose to sellers "market information" as well as "corporate inside information," *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), this is not one of those cases. The party charged with failing to disclose market information must be under a duty to disclose it to the plaintiffs.

See Fleischer, Mundheim & Murphy, *An Initial Inquiry into the Responsibility to Disclose Market Information*, 121 U.Pa. L.Rev. 798 (1973). Here there was no such duty because the appellees could reasonably assume that the appellants already had the basic information in the transfer sheets which showed sufficient market activity by appellees to require no repetition.

#### *Claim # 4*

This is a common law claim based on the same facts as alleged in claim # 3. Appellants contend that appellees breached a common law duty they owed to appellants by failing to disclose the extent of their holdings at the time of the private placement and by failing to disclose that they intended to make future purchases of Frigitemp stock. The District Court dismissed this claim on the ground that the allegation of nondisclosure of material facts is insufficient to state a claim at common law where there is no duty to speak. We agree.

A common law claim for fraud and deceit based on a mere failure to disclose must show either that there was a fiduciary relationship between the parties, see *Wood v. Amory,* 105 N.Y. 278, 281–82, 11 N.E. 636, 637 (1887), or at least that the defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact. See *Donovan v. Aeolian Co.,* 270 N.Y. 267, 271, 200 N.E. 815, 816 (1936). We have already noted in our discussion of Claim # 1 that, as purchasers of the debentures, appellees were acting at arm's length, not in a fiduciary capacity. We have also seen that appellees had a right to assume that appellants knew of their stock purchases, and thus appellees were not on notice that appellants were operating under a mistaken belief. Accordingly, plaintiffs' Claim # 4 was properly dismissed.

Affirmed.