**Kathryn R. WALTON and Irmgart Van Daell Heckel, Plaintiffs-Appellants,**

v.

**MORGAN STANLEY & CO. INCORPORATED, Defendant-Appellee,**

and

**Olinkraft, Inc., Defendant.**

**No. 685, Docket 79–7725.**

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1980.

Decided June 4, 1980.

Sidney B. Silverman, New York City, (Silverman & Harnes, New York City, of counsel), for plaintiffs-appellants.

Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiff-appellant Heckel.

Henry L. King, New York City (Davis, Polk & Wardwell, James W. B. Benkard, Robert F. Wise, Jr., E. Waide Warner, Jr., New York City, of counsel), Skadden, Arps, Slate, Meagher & Flom, New York City (William R. Meagher, William P. Frank, Jeffrey Gleckel, New York City, of counsel), for defendant-appellee.

Before LUMBARD, OAKES and NEW-MAN, Circuit Judges.

LUMBARD, Circuit Judge:

■ Kathryn R. Walton and Irmgart Van Daell Heckel appeal from an order entered by Judge Morris Lasker in the District Court for the Southern District of New York on October 10, 1979. The district court dismissed appellants' complaint, which they had filed derivatively on behalf of Olinkraft, Inc. and which alleged that Morgan Stanley & Co., Inc. had breached a fiduciary duty it owed to Olinkraft, because appellants had not alleged any injury to Olinkraft and therefore, according to the district court, they lacked standing. We affirm the district court's order on a different ground: that appellants had failed to state a claim upon which relief may be granted.[1]

The allegations of appellants' complaint, which we must accept as true in testing the propriety of the dismissal of the complaint, state the following:

In 1977, Kennecott Copper Corporation engaged Morgan Stanley, the investment banking and financial advisory concern, to find a company that Kennecott could acquire. One company Morgan Stanley considered was Olinkraft, which manufactures paper and other forest products. Olinkraft's management "cooperated" with Morgan Stanley's Mergers and Acquisitions Department, "supplied it with highly favorable confidential internal earnings projections," and "instructed [it] that the Confidential Inside Information was to be used in connection with the Kennecott Bid and was to be returned to Olinkraft if such bid did not go through."

Kennecott did not make a bid for Olinkraft, but two other companies did. The first, Texas Eastern Corporation, announced an offer on July 17, 1978, to acquire Olinkraft by paying $51 for Olinkraft shares, which had been selling for approximately $31 to approximately $39.[2] After the announcement, Morgan Stanley's Arbitrage Department purchased, for Morgan Stanley's own account, 149,200 shares of Olinkraft common stock "upon the informed conviction that a competing offer at a higher price than $51 per share would be made for Olinkraft stock"; and after these purchases, Morgan Stanley's Mergers and Acquisitions Department, which knew of the Arbitrage Department's purchases, disclosed to Johns-Manville, which it was advising financially, the confidential Olinkraft information "in an effort to induce [Johns-Manville] to make a substantially higher offer than $51 per share."

---

1. We may, of course, affirm the district court judgment upon a different ground than that on which the district court relied. *Helvering v. Gowran*, 302 U.S. 238, 245–46, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1937); *C-Suzanne Beauty Salon, Ltd. v. General Insurance Co.*, 574 F.2d 106, 111 n.8 (2d Cir. 1978).

2. The approximate price range of Olinkraft shares before the Texas Eastern announcement, although not stated in the complaint, appears in an affidavit supporting Morgan Stanley's motion to dismiss and is undisputed.

On September 25, 1978, a Johns-Manville subsidiary created for the purpose of acquiring Olinkraft, JM Capital, announced an offer to pay $57 per Olinkraft share. On October 10, Texas Eastern announced an improved offer of $60 per Olinkraft share. Johns-Manville responded by increasing its offer to $65 per share on October 18. Texas Eastern then withdrew from the bidding, and Olinkraft and Johns-Manville agreed in principle to a merger at $65 per share.

On October 30, appellant Walton demanded that Olinkraft's board of directors commence proceedings to require Morgan Stanley to account for profits it made from its purchase of Olinkraft stock. Having been informed that the board would not act upon her demand, Walton filed her complaint on November 3.

The district court, citing *Warth v. Seldin*, 442 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), dismissed the complaint on the ground that the appellants, not having alleged that Morgan Stanley's actions injured Olinkraft, had not established standing. The appellants, citing *Brophy v. Cities Service Co.*, 31 Del.Ch. 241, 70 A.2d 5 (1949), argue that injury is not a prerequisite of standing in this case because Delaware law, which governs in this diversity suit,[3] makes a breach of fiduciary duty actionable irrespective of injury. The appellants are correct, for *Brophy*, which the Delaware courts have consistently followed, states that a plaintiff need not allege injury to the corporation when claiming a breach of fiduciary duty and seeking an accounting of profits. 70 A.2d at 8.[4]

Morgan Stanley has not defended the district court's rationale for dismissing appellants' complaint. Instead, Morgan

Stanley argues that, far from a standing in a fiduciary relationship to Olinkraft, it represented first Kennecott and then Johns-Manville "under circumstances that clearly placed it in an arm's length position regarding Olinkraft," that it therefore breached no duty by disclosing the Olinkraft information to Johns-Manville, and that, accordingly, the appellants have failed to state a claim upon which relief may be granted. We agree.

Because this appeal acquaints us only with the complaint and the appellee's motion to dismiss, we do not have the benefit of findings of fact about whatever communication occurred between Olinkraft, the potential target, and Morgan Stanley, the financial advisor to the potential acquirer: how the communication proceeded, what understandings were reached, what assumptions or expectations the trade's practice would justify. But the only logical conclusion to be drawn from the complaint is that Olinkraft and Morgan Stanley dealt at arm's length. Morgan Stanley's client was Kennecott, and its task was to obtain information with which to advise Kennecott. Morgan Stanley was never hired by Olinkraft, nor was Morgan Stanley's task ever to act on Olinkraft's behalf. On the other hand, the constituents of Olinkraft's management were Olinkraft's shareholders, and the duty of its management was to act on the shareholders' behalf. In short, Morgan Stanley and Olinkraft's management were at all times responsible to different interests, and they had no relationship to each other before or other than in the acquisition discussions. Morgan Stanley and Olinkraft's management must be presumed to have dealt, absent evidence of an extraordinary relationship, at arm's length.

---

**3.** There can be no dispute that a federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); cf. *Day & Zimmermann, Inc. v. Chaloner*, 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation. *Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.

S.2d 78, 248 N.E.2d 910 (1969). Olinkraft is incorporated in Delaware.

**4.** We need not address the question whether *standing in diversity case is a matter of state or* federal law, for the recognition of standing of a shareholder to bring a derivative suit for the profits made by one who allegedly breached a fiduciary duty owed to the corporation accords with both federal and Delaware notions of standing.

Appellants contend that Morgan Stanley became a fiduciary of Olinkraft by virtue of the receipt of the confidential information. However, the fact that the information was confidential did nothing, in and of itself, to change the relationship between Morgan Stanley and Olinkraft's management. Put bluntly, although, according to the complaint, Olinkraft's management placed its confidence in Morgan Stanley not to disclose the information, Morgan Stanley owed no duty to observe that confidence. To be sure, in some instances the management of a potential target, such as Olinkraft, might be required by its responsibility to the shareholders' interest to cooperate, and even to disclose confidential information, to a potential acquirer or a financial advisor who, as did Morgan Stanley, stands at arm's length. But that obligation, while it burdens management, which might therefore reasonably insist upon an agreement of confidentiality, does not change the relationship between the target and the acquirer or its advisor. Appellants' complaint alleges no such agreement or understanding.[5]

Given the different constituents and responsibilities of Morgan Stanley and Olinkraft's management, appellants' reliance on *Brophy* and on *Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), a New York case which adopted *Brophy's* reasoning, is misplaced. Those cases predicate an accounting of profits without an allegation and showing of injury upon the fiduciary relationship of the officer, director, or employee to his corporation. Beyond corporate officers, directors, and in some instances employees, Delaware law has found a fiduciary relationship between a corporation's majority shareholders and its minority shareholders, *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977); but appellants have failed to cite any case from Delaware or elsewhere, and we have not found any, that considers one in Morgan Stanley's position to stand in a fiduciary relationship to one in Olinkraft's.[6] Without some indication that the Delaware courts would accept appellants' theory of liability, we see no reason to extend *Brophy* beyond the established notion of a fiduciary, especially since *Brophy* represents an exception to the principle that standing requires injury. *See Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275 (2d Cir. 1975), a diversity case that applied New York law—which we have no reason to believe takes a narrower view of fiduciary relationships than does Delaware law—and that refused to extend *Brophy* and *Diamond* to a situation where the nonpublic information upon which the defendant traded had been obtained in arm's length negotiations with the corporation on whose behalf the suit was brought.

In sum, the appellants have failed to state a claim upon which relief may be granted, for the complaint, although it alleges a breach of fiduciary duty, fails to state facts from which a fiduciary relationship arises under Delaware law between Olinkraft and Morgan Stanley.

Affirmed.[7]

---

**5.** Nor does the complaint allege that Morgan Stanley induced Olinkraft's management by deceit or misrepresentation to disclose the information.

**6.** The doctrine that a duty to disclose or refrain from trading arises from a specific relationship between two parties—and not simply from the fact that some investors have more information than others—is now established in both state and federal law. *See Chiarella v. United States*, — U.S. —, —, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980).

**7.** Morgan Stanley suggests two other grounds upon which the district court's judgment should be affirmed as well: (1) that appellants, no longer being shareholders of Olinkraft, lack the capacity to maintain a derivative suit on Olinkraft's behalf, or (2) that the complaint fails to satisfy Fed.R.Civ.P. 23.1 because the appellants failed to allege "with particularity" their efforts to demand from Olinkraft's directors the legal action they desired. Because we affirm on Morgan Stanley's first suggested ground, we need not address these others.

In addition, the dissent suggests that we should grant to appellants the opportunity to amend their complaint. However, appellants never sought leave to amend their complaint either in the district court or as an alternative form of relief in this court after Morgan Stanley raised the issue of the sufficiency of appellants' complaint. Accordingly, we see no reason to grant such leave *sua sponte*. *See Na-*

OAKES, Circuit Judge (dissenting):

So far as I can see, the majority decides this case on an issue that was never raised or argued below by the parties. It also does not give leave to the plaintiffs to amend their complaint. While an appellate court is not automatically precluded from ruling on an issue never presented to the court below, *see Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937), this may only occur when the case is exceptional, to avoid injustice, *Hormel, supra*, 312 U.S. at 557, 61 S.Ct. at 158, *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2588, at 749–50 (1971), or where the proper resolution is beyond any doubt. *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Even if this qualifies as such a case, which I doubt, it would seem that the losing party should be given "the opportunity to establish [in the lower court] additional facts which would affect the result." *Gowran, supra*, 302 U.S. at 247, 58 S.Ct. at 158. Since this involves a dismissal of a complaint for failure to state a claim for relief, at the very least appellants should have the opportunity to amend their complaint, to make it more specific in the allegations pertaining to the relation between Olinkraft and Morgan Stanley. Fed.R.Civ.P. 15(a); *see* 6 C. Wright & A. Miller, *supra*, § 1484, at 417 & n.9 (many cases cited).

Even without an amendment, I think the complaint, when construed liberally as Fed. R.Civ.P. 8(f) requires, *see New York State Waterways Association, Inc. v. Diamond*, 469 F.2d 419, 421 (2d Cir. 1972), can be said to allege that Morgan Stanley was acting in a fiduciary capacity, although the word "fiduciary" is never used. *Cf. Patch v. Stanley Works*, 448 F.2d 483, 487 n.9 (2d Cir. 1971) (complaint not specifically pleading

strict liability nevertheless deemed sufficient to raise that issue).

Here Morgan Stanley's Mergers and Acquisitions Department was engaged by Kennecott Copper Corporation to find a company which Kennecott could acquire for itself. One to be considered was Olinkraft, which, the complaint alleges, "cooperated with Mergers and Acquisitions in its work on the Kennecott Bid and supplied it with highly favorable confidential internal earnings projections," for an obviously "polite" if not a "friendly" possible tender offer. Moreover, "Mergers and Acquisitions" was instructed by Olinkraft that the Confidential Inside Information was to be used in connection with the Kennecott Bid and was to be returned to Olinkraft if such bid did not go through." The complaint goes on to allege that Mergers and Acquisitions nevertheless retained the confidential information after the Kennecott bid was abandoned, and Morgan Stanley's Arbitrage Department purchased a substantial block of Olinkraft common stock. Mergers and Acquisitions subsequently provided the "Confidential Inside Information" to Johns-Manville Corporation in an effort to induce it to make a higher offer than that already made by another company, Texas Eastern Corp., for the Olinkraft acquisition. The complaint concludes that the conduct of Mergers and Acquisitions prohibited Morgan Stanley from purchasing Olinkraft shares, and that it should not be allowed to "profit[ ] from a tortious breach of duty" in violation of the common law.

The question presented very briefly is whether the complaint, broadly construed, states a sufficient relation between Morgan Stanley and Olinkraft so as to prevent the former from utilizing nonpublic material information obtained from the latter for its own profit. I think it does. True, Morgan Stanley was hired and presumably paid by

---

*tional Union of Hospital and Health Care Employees v. Carey*, 557 F.2d 278, 282 (2d Cir. 1976) (appellants did not request leave to amend complaint in district court nor disclose in court of appeals what additional allegations they would make which might lead to a different result; "Absent some indication as to what appellants might add to their complaint in order to make it viable . . . we see no reason to grant appellants relief in this Court which was not requested below.") *See generally,* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1489, at 448–49.

Kennecott for its services, and it was not hired by Olinkraft. Thus, at least during the initial approaches on Kennecott's behalf made by Morgan Stanley, it was surely not an agent of, and owed no especial duty to, Olinkraft or Olinkraft's stockholders. But after Olinkraft began to cooperate in the deal by turning over the "Confidential Inside Information" as to favorable earnings prospects, I think the acceptance of such information by Morgan Stanley, *on the confidential terms*, along with its understood role as intermediary in a cooperative takeover, imposed a duty on the investment banker under well-established common law principles not to use that information for its own profit. As Professor Scott stated in his treatise, "The same principles [that prevent a fiduciary from taking personal advantage of confidential information obtained as such, as against the beneficiary] are applicable even though the parties are not technically in a fiduciary relation, if one of them acquires confidential information from the other." 3 A. Scott, *The Law of Trusts* § 505, at 2428 (1939) (citing *Tyler v. Tyler*, 54 R.I. 254, 172 A. 820 (1934), where a son was held accountable to his father for profiting from confidential information furnished by his father).[1]

While ordinarily this doctrine has been applied in the employee context, where an employee *already* had a duty as agent to his employer, *e. g., Hunter v. Shell Oil Co.*, 198 F.2d 485, 488–89 (5th Cir. 1952) (geologist employed by oil company), or where an employee acquired secret information relating to a portion of his employer's business with respect to which he was not an agent,

*e. g., Brophy v. Cities Service Co.*, 31 Del. Ch. 241, 70 A.2d 5, 7–8 (1949),[2] I see no logical reason why it should not extend to the case of a corporate marriage-broker where the parties are cooperative, absent agreements to the contrary. The fact that Morgan Stanley had no inherent pre-existing duty to Olinkraft should not prevent us from constructing a fiduciary relationship once the banker presumably agreed to use the information only for the Kennecott bid.[3] Indeed, in *Brophy*, only *after* the employee acquired the confidential information did he become a fiduciary, thereby creating a duty and trust relationship. *Id.* at 7. As Judge Learned Hand noted when this court upheld for a third time the constitutionality of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (dealing with a sale by a director or corporate officer of stock in his company to an outsider based on inside information):

> When they sold shares, it could indeed be argued that they were not dealing with a beneficiary, but with one whom his purchase made a beneficiary. That should not, however, have obscured the fact that the director or officer assumed a fiduciary relation to the buyer by the very sale; for it would be a sorry distinction to allow him to use the advantage of his position to induce the buyer into the position of a beneficiary, although he was forbidden to do so, once the buyer had become one.

*Gratz v. Claughton*, 187 F.2d 46, 49 (2d Cir.), *cert. denied*, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951), *quoted in Cady, Roberts & Co.*, 40 S.E.C. 907, 914 n. 23 (1961), *in*

---

**1.** Agency law itself suggests that a party not presently in an agency relationship may nevertheless be subject to the same duties not to use or reveal confidential information provided by another party. *See Restatement (Second) of Agency* § 395, Comment d at 222 (1958) ("A person who, in view of a prospective agency, invites a confidence from or permits the prospective principal to reveal confidential information to him, is subject to the same duties [as in an agency relationship].").

**2.** The *Brophy* case finds analogous support in the work of Professor Scott. 70 A.2d at 8 (quoting from 3 A. Scott, *The Law of Trusts*

§ 505.1, at 2429 (1939) (discussing employee's use of employer trade secrets)).

**3.** I extrapolate Morgan Stanley's agreement from the complaint's allegations that Olinkraft "instructed" the investment banker on the sole use to which the information could be put. Once Morgan Stanley accepted the information knowing Olinkraft's terms of transmittal, I would imply its agreement to abide by such restrictions. In this way, perhaps appellants here would have the makings of a breach of contract action, although the damages would admittedly be speculative.

*turn quoted in Chiarella v. United States,* —— U.S. ——, ——, n. 8, 100 S.Ct. 1108, 1114 n. 8, 63 L.Ed.2d 348 (1980).

To my mind, the need to police this sort of use of confidentially revealed information inheres in the role of the investment banker during merger/acquisition activity. As was pointed out by Morgan Stanley's own Robert F. Greenhill in an ABA Symposium, discussing the responsibilities of the investment banker in the tender offer context:

> In terms of establishing and maintaining communications between both sides, he has an invaluable role. The ability to be recognized as advisor and yet not bind the principals permits confidential negotiations to progress while the public stance of the two companies is apparently that of adversaries. Secrecy is vital. Each side in the dialogue must trust the conduit through which the discussions take place. The investment banker maintains the dialogue.

Greenhill, *Structuring an Offer,* 32 Bus. Law. 1305, 1309 (1977). In this posture of a "dialogue," with confidential information changing hands and secrecy vital, it appears to me improper for the corporate marriage-broker, a potential insider to both acquiring and target companies, consciously and intentionally to profit from the dialogue.[4] For me, this case is distinguishable from the late Judge Gurfein's *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275 (2d Cir. 1975), which refused to hold an investment-company debenture buyer accountable for profits realized in connection with the debenture acquisition, even though it had been previously furnished with confidential information. There the information was, as the court's opinion pointed out, "required" to be disclosed to the investment company for the purpose of selling the debenture to it in an arm's length transaction. *Id.* at 279. Here, Olinkraft furnished its projections to Kennecott

through Morgan Stanley, only in connection with *Kennecott's* contemplated acquisition, and not because it was *required* to do so but because it evidently wanted to cooperate. Olinkraft instructed Morgan Stanley to return the "Confidential Inside Information" if it was not used for the Kennecott bid. Unlike the defendants in *Frigitemp,* Morgan Stanley was not a *party* to the acquisition and received the information strictly as a result of its brokering efforts to bring the parties together.

Nor is this case like those holding that a commercial bank has no fiduciary duty to refrain from financing the takeover of a borrower and that the bank is not precluded from using information from one borrower to evaluate a loan to another. *E. g., Washington Steel Corp. v. TW Corp.,* 602 F.2d 594, 599–604 (3d Cir. 1979), *discussed in* 14 Ga.L.Rev. 116 (1979); *American Medicorp, Inc. v. Continental Illinois National Bank and Trust Co.,* No. 77 C 3865 (N.D.Ill. Dec. 30, 1977), *discussed in* Note, *Bank Financing of Involuntary Takeovers of Corporate Customers: A Breach of a Fiduciary Duty?,* 53 Notre Dame Law. 827 (1978) (financing not a per se breach of fiduciary duty but misuse of confidential customer information may be a breach). The investment bank's role as broker in a friendly takeover and Morgan Stanley's purchase of Olinkraft stock distinguish this case from the commercial bank situation, even assuming *arguendo* the correctness of the bank cases' holdings.

This is not to say that plaintiffs below should be entitled to summary judgment; quite to the contrary, because serious factual issues are presented even reading the complaint in the most favorable light as I have done above. In the first place I wonder how the confidential information—here favorable earnings projections—could be "returned" as the complaint alleges. Surely the pieces of paper on which the projections are written could be returned, but one

---

**4.** It is unnecessary here to consider whether a "Chinese wall" could be erected between the Arbitrage Department and the Mergers and Acquisitions Department. That question has yet to be decided by this circuit. *Cf. Slade v.*

*Shearson Hammill & Co.,* 517 F.2d 398 (2d Cir. 1974) (investment broker/securities broker; "Chinese wall" question improvidently certified).

would have to be very naive to think that an experienced analyst would not be able to retain in his memory such favorable projections. I would assume that the highly capable people at Morgan Stanley or any other investment bank have facts and figures floating around in their heads that would on paper constitute the contents of many corporate annual reports.

Moreover, the precise role of Morgan Stanley in the instant transaction may be overstated in the complaint. One gathers that Olinkraft had employed the investment banking firm of Blyth Eastman Dillon & Co., Incorporated (Blyth), to render an opinion in connection with the merger proposals of both Texas Eastern and Johns-Manville. The joint proxy statement does not indicate when Blyth was engaged or whether it was employed in connection with the previous Kennecott tender offer possibility. I would be less inclined to find a fiduciary duty on the basis of Morgan Stanley's relation as broker to both parties, and the receipt of confidential information, were Olinkraft to have had its *own* broker on whom it relied for advice in the transaction. Olinkraft's use of its own broker would lessen the exclusivity and dependence the complaint implicitly alleges in the instant case. The usual other defenses of immateriality, lack of causation and the like are, of course, always open.

Finally, I do not think that considering the complaint to state a claim for relief would overly inhibit investment bankers in a takeover situation. While they surely want to acquire all the information they can, *see* McAtee, *The Role of the Dealer Manager in the Disclosure Process*, 32 Bus. Law. 1331, 1332 (1977), perhaps they should acquire confidential information only on the express understanding that it may be utilized in their Arbitrage Department, or that they may turn it over to other clients. Or perhaps they should erect a "Chinese wall" between their Mergers and Acquisitions Department and their Arbitrage Department. While there may be no "general duty between all participants in market transactions to forgo actions based on material, nonpublic information," *Chiarella v. United States, supra*, 100 S.Ct. at 1117, the duty here arises from a specific relation and agreement between the parties, at least in my view.

I need not belabor the other points which *were briefed and argued* but are not addressed in the majority opinion. Since Delaware law requires no allegation of actual injury to the corporation in a derivative action brought to recover profits obtained from a breach of fiduciary duty, *Brophy v. Cities Service Co., supra*, the conclusion of the court below that plaintiffs lacked standing because no injury to the corporation was alleged is improper. Morgan Stanley also argues that plaintiffs lacked standing to bring this suit because they were no longer shareholders of either Olinkraft or the new Olinkraft as of January 19, 1979. But a Delaware statute, Del.Code Ann. tit. 8, § 261, provides among other things that any civil action pending "by or against" a corporation prior to a merger may be continued in the name of the surviving corporation. In that this action *was* "pending" at the time Olinkraft was merged into a Johns-Manville subsidiary, and since appellants do own stock in the parent corporation of the new Olinkraft, I think there is standing here under Delaware law. Furthermore, I believe that plaintiffs did comply with the requirements of Fed.R.Civ.P. 23.1, in that they "allege[d] with particularity" their efforts to have Olinkraft directors bring the action. They did telegraph the directors, and it was hardly likely that the directors would sue the investment banker arranging the deal under the circumstances.

With some hesitation, because we are in a rather uncharted area, but with belief in the fundamentally applicable principles, I respectfully dissent.