William **ADKINS**, individually and as a shareholder suing in the right of W. Babylon Chevrolet–Geo, Inc., d/b/a Palanker Chevrolet, a Delaware Corporation, **Plaintiff–Appellee/Cross–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellant/Cross– Appellee,**

General Motors Acceptance Corporation, Timothy Rinke, Paul Fields, and West Babylon Chevrolet–Geo, Inc., Defendants.

Nos. 05–2059–cv, 05–2308–cv.

United States Court of Appeals, Second Circuit.

March 3, 2006.

Kendall Coffey, Coffey & Wright, L.L.P., Miami, FL (Angela Sherill, on the brief), for William Adkins.

Daniel L. Goldberg, Bingham McCutchen LLP, Boston, MA (John R. Skelton, James C. McGrath, Serena D. Madar, T. Peter R. Pound, on the brief), for General Motors Corporation.

Present: Hon. ROBERT A. KATZMANN, Hon PETER W. HALL, Circuit Judges, and Hon. EDWARD R. KORMAN, District Judge.*

### SUMMARY ORDER

General Motors ("GM") appeals from the judgment below in favor of William Adkins, asking this Court to vacate the jury verdict in Adkins' favor and to reverse the district court's denial of GM's motion for judgment as a matter of law. We assume the parties' familiarity with the underlying facts and procedural posture of the case.

We conclude that GM should have prevailed on its motion for judgment as a matter of law as to Adkins' breach of fiduciary duty claim, which was the sole claim that went to trial. There was no cognizable theory underlying this claim. To the extent that the claim rested on the theory advanced in Adkins' brief that GM had engaged in self-dealing that harmed the dealership corporation and prevented it from attaining the financial targets that would have enabled the redemption of GM's preferred stock, such that Adkins would have become the sole owner, it was fatally flawed.

First, any such breach of fiduciary duty claim would arguably be derivative rather than direct, given the Delaware Supreme Court's recent holding in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,* that for a breach of fiduciary duty claim to be direct, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that *he or she can prevail without showing an injury to the corporation."* 845 A.2d 1031, 1038–39 (Del.2004) (emphasis added). As the district court ruled in its July 12, 2004 order, because Adkins did not maintain an equity interest in the dealership corporation throughout the pendency of the litigation, he lacked standing to bring a derivative claim.

Moreover, even assuming *arguendo* that this claim could somehow have been construed as direct rather than derivative, it would still fail on the merits. There is no credible evidence indicating that, had GM pursued the criminal or civil actions on the dealership's behalf that Adkins contends were warranted, the dealership's financial situation would have been any different. Indeed, although Adkins identifies, as a wrongful action, GM's decision not to file a criminal complaint over Gehrlein's misconduct, the record is undisputed that a criminal investigation was instituted nonetheless, and the attorney who litigated the dealership's insurance claim testified that the lack of criminal

* The Honorable Edward R. Korman, Chief Judge, United States District Court for the Eastern District of New York, sitting by designation.

charges against Gehrlein had no effect on that litigation.[1] Similarly, although Adkins also identifies as wrongful GM's initial refusal to file a malpractice lawsuit against the dealership's accounting firm, Adkins simply initiated his own derivative action against that firm, and GM later took over prosecution of the lawsuit. Finally, although Adkins has attempted to argue that the dealership's financial situation was such that he was actually entitled to buy out GM's preferred shares as of 2001, there is no evidence supporting this view. The only evidence identified by Adkins in support of this argument is an internal document in which GM explored the hypothetical consequences of forgiving the approximately $1.5 million that the dealership owed to GM. The document did not reflect the dealership's actual financial situation as of 2001. In sum, therefore, there is no evidence that at any time before December 3, 2003, the dealership's finances were such that Adkins could have obtained sole ownership, nor that the dealership's finances would have been in such condition absent the conduct on GM's part that Adkins deems wrongful.[2]

■ To the extent that Adkins' breach of fiduciary duty claim against GM rested upon the theory that GM had wrongfully bought out his common stock on a pretextual basis, and otherwise treated him unfairly, it was likewise fatally flawed. Adkins' remedy for these asserted wrongs lay not in a breach of fiduciary duty claim, but in a breach of contract claim. The Stockholders Agreement, along with the Certificate of Incorporation that it referenced, set forth the terms of the relationship among GM, Adkins, and the dealership company, including the conditions upon which the dealership corporation would be able to redeem GM's preferred stock and, conversely, upon which GM would be able to buy out Adkins' common stock or terminate Adkins. Had Adkins believed that GM breached the express terms of this contract, and/or the implied covenant of good faith and fair dealing underlying the contract, he should have brought a breach of contract claim. *See, e.g., Coleman v. Taub,* 638 F.2d 628, 636 (3d Cir.1981) (stating, in case involving Delaware law, that "where all shares of the corporation are owned by only two shareholders and the public is not affected, there is no reason why an appeal to general fiduciary law should be used by either party as a pretext for evading his contractual obligations"). Adkins did not attempt to bring a breach of contract claim, however, until after the deadline for filing amended pleadings had passed. The district court therefore denied his motion to amend his complaint, and Adkins has not appealed that denial.

As such, we are constrained to vacate the jury verdict in favor of Adkins on his breach of fiduciary duty claim and to reverse the district court's denial of GM's motion for judgment as a matter of law.

---

1. The force of this testimony and other evidence to the same effect is not undermined by the fact that, when a GM-designated member of the dealership board was asked at trial whether he had understood "one of the requirements to make a successful claim against a fiduciary bond is at least you try to prosecute the wrongdoers," he answered "[t]hat's correct." As made clear by the testimony of the attorney who actually litigated the insurance claim, the insurance company itself did not take such a position.

2. The foregoing makes it unnecessary to reach the issue of whether—in addition to showing that GM's actions prevented him from obtaining sole control of the dealership corporation—Adkins would have also been required to show that GM acted as it did "for the sole and improper purpose" of depriving him of his asserted right as a shareholder to obtain ownership of the corporation. *See Ueltzhoffer v. Fox Fire Dev. Co.,* 1991 WL 271584, at *8 (Del.Ch.1991), *aff'd,* 618 A.2d 90 (Del.Super.Ct.1992).

We therefore remand the case to the district court with instructions to grant the motion.

█ With regard to Adkins' cross-appeal over the summary judgment dismissal of his claim under the Automobile Dealers Day in Court Act (the "ADDCA"), we affirm. We need not reach the question of whether Adkins had standing to bring this claim as an individual operator of a dealership, or whether the only party with standing to bring this claim was the dealership corporation itself. Even assuming *arguendo* that Adkins did have standing to bring the claim, this Court held in *Empire Volkswagen v. World–Wide Volkswagen Corp.*, 814 F.2d 90 (2d Cir.1987) that:

> In order to succeed on a Dealers' Act claim, the dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer ... to achieve an improper or wrongful objective ... Failure to act in good faith under the Dealers' Act can be found only where there is evidence of a wrongful demand enforced by threats of coercion or intimidation.

*Id.* at 95–96 (internal citations and quotations omitted).

Here, Adkins has not alleged any wrongful demands, enforced by threats of coercion or intimidation, on GM's part. Rather, the "wrongful" actions that he identifies are GM's various decisions as to the dealership corporation as a whole, and as to him personally, *i.e.*, GM's purchase of Adkins' common stock and concomitant termination of him as president. But none of these acts can be said to have been "enforced by threats of coercion or intimidation." GM's decisions as to the dealership corporation as a whole were enforced through its majority voting interest, and GM's decisions as to Adkins personally were enforced pursuant to the terms of the Stockholders Agreement, which Adkins does not claim was breached. Thus, Adkins' ADDCA claim must fail, and we affirm the district court's summary judgment dismissal of this claim.

Accordingly, the judgment of the district court is **VACATED AND REVERSED IN PART, and AFFIRMED IN PART.**