**JOHN SWANN HOLDING CORP., derivatively, on behalf of Club-Create, Inc., Plaintiff,**

**v.**

**Corey SIMMONS, Curtland Fields, Annette Strickland, and Club-Create, Inc., Defendants.**

No. 13 Civ. 8619(AT).

United States District Court, S.D. New York.

Signed Oct. 16, 2014.

Brett Thomas Perala, John Jacob Rosenberg, Matthew H. Giger, Rosenberg & Giger, P.C., New York, NY, for Plaintiff.

Corey Simmons, pro se.

Frank Joseph Crupi, Tucci, Hot, Crupi & Stanziola, P.C., Long Branch, NJ, for Defendants.

### *MEMORANDUM AND ORDER*

ANALISA TORRES, District Judge:

In this diversity action, Plaintiff, John Swann Holding Corp., derivatively on behalf of ClubCreate, Inc. ("CCI"), alleges that Defendants, Corey Simmons, Curtland Fields, and Annette Strickland, breached their fiduciary duty to CCI's stockholders. Plaintiff also asserts claims for conversion and unjust enrichment against Simmons. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the fiduciary duty claims as to all Defendants, except for any bad faith or duty of loyalty claims asserted against Simmons relating to the

alleged misuse of corporate assets.[1] For the following reasons, Defendants' motion is DENIED.[2]

## BACKGROUND

The following facts are taken from the amended complaint (the "complaint") and are accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007).

CCI is a corporation organized under the laws of Delaware with its principal place of business in Union City, New Jersey. Am. Comp. ¶ 7, ECF No. 18. CCI's website provides a "platform through which the website's users, with the authorization of rights holders in musical content can mix, 'produce' and otherwise manipulate musical sounds to create new and original works." *Id.* ¶ 11.

Simmons is the co-founder, CEO, and chairman of the board of directors (the "Board") of CCI. *Id.* ¶ 4. Fields was a member of CCI's Board from approximately May 30, 2007 to September 17, 2013. *Id.* ¶¶ 5, 12. Strickland was a member of CCI's Board from approximately May 30, 2007 to December 2013. *Id.* ¶¶ 6, 12.

John Swann Holding Corp., a Canadian corporation, is owned by John Swann. *Id.* ¶¶ 3, 14–15. John Swann's son, Craig Swann, is the owner of Crash!Media, a software development company that entered into a licensing agreement with CCI in June 2007. *Id.* In connection with this agreement, Craig Swann was elected to the Board of CCI. *Id.* ¶ 16.

Plaintiff is the owner of 20,000 shares of common stock in CCI, which comprises 1% of the outstanding equity. *Id.* ¶¶ 20–22. Plaintiff purchased the shares for $275,000 pursuant to a Common Stock Purchase Agreement (the "Swann Agreement") on February 20, 2008. *Id.* The Swann Agreement was CCI's "first significant financial investment" and "the only third party investment advanced" in 2008 or 2009. *Id.* ¶¶ 20–21, 25. The Swann Agreement provided that CCI would pay a portion of its net revenues to Plaintiff. *Id.* ¶ 23. Because CCI failed to repay any portion of Plaintiff's investment within one year, CCI was contractually required to increase Plaintiff's equity holding in CCI from 1% to 2%. *Id.* ¶ 24. CCI "failed to pay any monies" and, despite demand, has not provided any additional stock to Plaintiff. *Id.* ¶¶ 23–24.

---

1. Defendants submit two largely overlapping memoranda of law in support of their motions to dismiss. One memorandum is submitted on behalf of Strickland and Simmons ("Def. Mem."), ECF No. 22, and the other is submitted on behalf of Fields ("Fields Mem."), ECF No. 27. Defendants also submit two reply memoranda. In Fields' reply, ECF No. 33, Fields explicitly adopts the reply memorandum submitted by Strickland and Simmons ("Def. Reply"), ECF No. 32. Unless otherwise noted, all citations in this Order are to the papers submitted by Strickland and Simmons, ECF Nos. 22 and 32. Defendants acknowledge that the allegations as to Strickland and Fields are "virtually identical" with the exception of paragraph 53 of the amended complaint, which contains allega-

tions made against Strickland but not Fields. Def. Mem. 2; Fields Mem. 2.

2. Simmons and Strickland also move, in the alternative, pursuant to Rule 12(f) for an order striking allegations that Simmons breached his fiduciary duty, except for allegations relating to the misuse of corporate assets. In their reply papers, Defendants concede that because Plaintiff does not oppose their attempt to seek partial dismissal of Count One of the amended complaint relating to Defendants' alleged breaches of fiduciary duty, "there is no need for alternative relief under Fed.R.Civ.P. 12(f)." Def. Reply 1. Accordingly, the Court does not address the issue.

In 2009 or early 2010, Simmons met Bigram Zayas, the principal of Zedia Media Group, LLC ("Zedia"), and the brother and personal manager of Marc Anthony, a recording artist. *Id.* ¶¶ 27–28. On approximately February 28, 2010, CCI entered into a consulting service agreement with Zedia. *Id.* ¶ 28. Although Zedia performed its obligations under the agreement, CCI did not issue common stock to Zedia or elect a director chosen by Zedia as required under the agreement. *Id.* ¶¶ 28–29.

In fall of 2011, CCI entered into an agreement with Anthony for his assistance in the business development, marketing, and promotion · of CCI (the "Anthony Agreement"). *Id.* ¶ 30. Although Anthony performed under the terms of the agreement, CCI breached by "(1) failing to grant Mr. Anthony an 'executive officer' position in CCI; (2) refusing to issue to Mr. Anthony shares of common stock in CCI; and (3) failing to elect Mr. Anthony and Bigram Zayas to the Board, all of which CCI is contractually obligated to do under the Anthony Agreement." *Id.* ¶ 31. Between late 2011 and March 2013, Anthony made personal loans to CCI totaling approximately $1.3 million. *Id.* ¶¶ 32–33. Plaintiff alleges that "as a result of the mismanagement and intentional misconduct of Mr. Simmons and his co-defendant directors," CCI has "failed to repay any portion" of its obligations under the loan. *Id.* ¶ 34.

Despite Plaintiff's repeated demands that CCI disclose its financial records, CCI failed to make payments or account to Plaintiff as required under the Swann Agreement. *Id.* ¶ 35. Plaintiff learned that CCI had not filed company tax returns "for any year since its inception in 2008 ... subjecting [CCI] to substantial potential fines and penalties." *Id.* ¶ 37. CCI paid its employees, including its CEO,

Simmons, "on an independent contractor basis instead of a proper 'W–2' basis." *Id.* ¶ 64. Plaintiff asserts that "it became clear that CCI had not maintained proper financial accounting records ... and had neither the ability nor the intention to provide the requested documentation." *Id.* ¶ 36. Specifically, CCI failed "to maintain proper financial books and records of CCI recording revenues, expenses and the disbursement of investment and loan proceeds." *Id.* ¶ 64.

Shortly after the launch of the "beta" version of the CCI website in November 2012, "a number of significant contractual relationships of CCI began to unravel as a direct result of Mr. Simmons's mismanagement of [CCI]." *Id.* ¶ 40. In particular, CCI failed to pay an agreed-on license fee to Loopmasters, a company that provided "studio sounds to be employed by users of the CCI Website to create new musical works," which resulted in a breach of contract claim being asserted against CCI. *Id.* ¶¶ 40–41. In July 2012, CCI engaged TAG Strategic, a digital entertainment consulting firm to assist with the launch of the CCI website. *Id.* ¶ 43. In January 2013, TAG resigned "as a direct result of its frustration with Mr. Simmons's failure to follow up on projects and CCI's failure to pay amounts that were due to TAG Strategic pursuant to its agreement." *Id.* Two software developers who performed work for CCI brought suits against CCI alleging nonpayment of amounts due. *Id.* ¶ 45. In addition, "approximately $50,000 of funds that had been received by CCI from Jabra [a manufacturer of wireless speakers and headphones] to be used for specified purposes were not used for those purposes or paid to the designated parties." *Id.* ¶¶ 41, 45.

Plaintiff alleges that "between 2008 and 2012, Mr. Simmons's improper personal cash withdrawals and other diversions of

corporate funds for personal expenditures totaled well over $100,000." *Id.* ¶ 52. Simmons' expenditures purportedly included payments for dentist bills, personal meals, hotel expenses, trips to strip clubs, rent payments on an apartment that Simmons shared with his girlfriend, Robin Strickland, the daughter of Board member Strickland, and advances on "loans" to Robin Strickland, which lacked a legitimate business purpose. *Id.* ¶¶ 53–54. Plaintiff claims that although Strickland was aware of these corporate diversions, she "did nothing to protect [CCI] from Mr. Simmons's misconduct" despite her fiduciary obligations. *Id.* ¶ 53. Simmons' misuse of funds and CCI's commercial failings were "known to, condoned by, and in certain instances facilitated by defendants Strickland and Fields." *Id.* ¶ 46. Strickland and Fields failed to investigate or redress unlawful conduct by Simmons, and they took no action to monitor the financial situation of CCI. *Id.* ¶ 55.

In the spring and summer of 2013, representatives for Zayas and Anthony attempted to formalize certain agreements with CCI to protect their interests from Simmons' misconduct. *Id.* ¶ 47. Defendants refused to execute documents memorializing agreements "pursuant to which [Zayas and Anthony] had already performed their obligations ... unless certain provisions were inserted in those documents releasing them and Mr. Simmons from liability for the misconduct." *Id.* Specifically, Simmons informed counsel for Zayas and Anthony that the Board, "which was controlled by [Defendants], 'deems it in the best interest of [CCI] to maintain continuity of management,'" and sought a provision that would prevent Defendants'

removal from the Board based on prior acts or omissions. *Id.* ¶ 48.[3] In late summer of 2012, Simmons disclosed to an independent contractor a draft of a new CCI shareholder agreement intended to insulate Simmons from removal as an officer and director and to increase his control over corporate decisions. *Id.* ¶ 44.

According to the complaint,

> Rather than taking appropriate steps ... to ensure that Mr. Simmons's improper conduct ceased, to seek redress therefor and to rectify the manifest corporate failings that have threatened the very viability of [CCI], defendants Strickland and Fields, in derogation of their duty of loyalty to CCI, attempted to exculpate and insulate themselves and Mr. Simmons from liability by seeking releases for their fiduciary breaches.

*Id.* ¶ 46. Plaintiff argues that, "[i]n acting in this fashion, [Defendants], who collectively controlled the Board, abdicated entirely their fiduciary and other obligations as directors of CCI." *Id.* ¶ 55.

In August 2013, representatives of Zayas, Anthony, and Zedia made a presentation to the Board outlining concerns regarding Simmons' misconduct and potential breaches of fiduciary duty by Defendants. *Id.* ¶ 57. On September 12, 2013, the representatives sent a letter to Defendants restating their concerns that Simmons had misappropriated funds and that Fields and Strickland had acquiesced in and facilitated Simmons in this misconduct. They requested that Defendants resign from the Board of CCI. *Id.* ¶¶ 57–58; *Id.* Ex. A.

**3.** Defendants submit a copy of this correspondence with their moving papers. Simmons Decl. Ex. 1, ECF No. 24–1. Plaintiff does not contest the validity of the email and quotes from it in the complaint. Accordingly, the document is incorporated by reference and may properly be considered for purposes of this motion. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

Fields resigned from the Board on approximately September 17, 2013, "after he had received formal notice of his fiduciary breaches." *Id.* ¶¶ 6, 59. Strickland resigned from the Board in December 2013, after the commencement of this action and "after she had received formal notice of her fiduciary breaches." *Id.* ¶¶ 7, 60.

## DISCUSSION

### I. *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On such a motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc.,* 493 F.3d at 98.

### II. *The Complaint*

■ Under New York choice of law rules, the law of the state of incorporation governs claims for breach of fiduciary duty against a corporation. *See Matsumura v. Benihana Nat'l Corp.,* 465 Fed.Appx. 23, 29 (2d Cir.2012) (summary order) (citing *Walton v. Morgan Stanley & Co.,* 623 F.2d 796, 798 n. 3 (2d Cir.1980)). Because CCI is incorporated in Delaware, Delaware law applies to the breach of fiduciary duty claims here.

### A. The Exculpatory Provision in CCI's Certificate of Incorporation

Defendants submit a certified copy of the CCI certificate of incorporation. Simmons Decl. Ex. 1, ECF No. 24–1. Article VIII of the certificate provides, "[t]o the fullest extent permitted by the Delaware General Corporation Law ... a director of the Company shall not be personally liable to the Company or its stockholders for monetary damages for breach of fiduciary duty as a director." *Id.* Plaintiff does not contest the validity of this certificate, and the Court may take judicial notice of the existence of this provision. *See La. Mun. Police Emps. Ret. Sys. v. Blankfein,* 08 Civ. 7605, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (citing *Ferre v. McGrath,* 06 Civ. 1684, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007)).

■ Exculpatory clauses are recognized under Delaware law, but exculpation is limited under 8 Del.Code § 102(b)(7) to cover only breaches of the duty of care. *See In re NYMEX S'holder Litig.,* C.A. No. 3621, 2009 WL 3206051, at *6 (Del.Ch. Sept. 30, 2009). Notwithstanding the existence of a § 102(b)(7) exculpatory provision, directors may still be held liable for bad faith and breaches of the duty of loyalty. *See Stone v. Ritter,* 911 A.2d 362, 367 (Del.2006). In order to state a claim for breach of fiduciary duty under such circumstances, "plaintiff's must plead facts supporting a claim that is not barred by

the exculpatory charter provision—for example, a claim for a breach of the board's duty of good faith or loyalty." *Malpiede v. Townson*, 780 A.2d 1075, 1094 n. 65 (Del. 2001); *see also Rahbari v. Oros*, 732 F.Supp.2d 367, 378–79 (S.D.N.Y.2010). In other words, dismissal is appropriate if the complaint raises claims "falling only within the duty of care" and not implicating bad faith or the duty of loyalty. *OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 723–24 (Del.Ch.2014) (citing *Malpiede*, 780 A.2d at 1094).

### B. Bad Faith and the Duty of Loyalty

Defendants concede that Simmons' alleged misappropriation of corporate assets is sufficient to state a claim against Simmons for bad faith or breach of the duty of loyalty but argue that all other allegations of bad faith and disloyalty by Simmons should be dismissed. Def. Mem. 2. Defendants also contend that Plaintiff has failed to allege bad faith or breach of the duty of loyalty by Fields or Strickland. *Id.* at 12–18. Specifically, Defendants argue that aside from the claim that Simmons misused corporate funds, the allegations in the complaint are either conclusory or do not rise beyond violations of the duty of care and should be dismissed under the § 102(b)(7) exculpatory provision. *Id.* Defendants direct the Court to cases holding that even grossly negligent conduct falls within the duty of care, *id.* at 11 (citing *Malpiede*, 780 A.2d at 1094–95; *McPadden v. Sidhu*, 964 A.2d 1262, 1273–74 (Del.Ch. 2008)), and argue that any failure to keep accurate financial records, file taxes, meet contractual obligations, prevent the misap-

propriation of funds, and otherwise monitor the financial circumstances at CCI are, at most, grossly negligent duty of care violations that do not implicate bad faith or the duty of loyalty.[4]

A failure to act in good faith may be demonstrated "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del.2006) (internal quotation marks omitted); *see also Stone*, 911 A.2d at 369. Bad faith encompasses both "intent to harm [and] also intentional dereliction of duty." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 240 (Del.2009). The duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). "Most basically, the duty of loyalty proscribes a fiduciary from any means of misappropriation of assets entrusted to his management and supervision." *U.S. W., Inc. v. Time Warner Inc.*, C.A. No. 14555, 1996 WL 307445, at *21 (Del.Ch. June 6, 1996). Other instances of director disloyalty "include, but certainly are not limited to, the motives of entrenchment, fraud upon the corporation or the board, abdication of directorial duty, or the sale of one's vote." *Cede*, 634 A.2d at 363 (citations omitted). As part of the duty of loyalty,

---

4. Defendants also argue that each of Plaintiff's allegations must be considered individually. Def. Mem. 11–18. However, the Court declines to read the complaint in this piecemeal fashion. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 732 (2d Cir.2013) ("Contrary to the analysis [the defendant] invites us to undertake, it is well-settled that a complaint must be read 'as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009))).

directors also owe a "duty of oversight," meaning they must attempt in good faith to ensure that a corporation complies with applicable legal standards. *See Morello v. McGee,* 23 F.Supp.3d 86, 95, 2014 WL 2196406, at *7 (D.Conn.2014) (citing *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del.Ch.1996); *Stone,* 911 A.2d at 370). However, the burden to state a claim under a failure of oversight theory is "quite high," *Caremark,* 698 A.2d at 971, and requires that directors *"knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities." *In re Citigroup Inc. S'holder Derivative Litig.,* 964 A.2d 106, 123–125 (Del.Ch.2009).

■ The complaint contains sufficient allegations to state a claim that Defendants acted in bad faith and breached the duty of loyalty. Plaintiff alleges specific facts relating to at least three categories of wrongdoing by Defendants, namely that Defendants (1) failed to engage in basic corporate formalities, make required tax filings, and monitor misconduct by Simmons or the financial circumstances at CCI, thereby facilitating Simmons' misappropriation of corporate funds; (2) "with full knowledge of [Simmons' misappropriation of funds and CCI's failure to meet its legal and contractual obligations], refus[ed] to take any corrective actions to ameliorate the resulting harm to CCI"; and (3) "demand[ed] that they be insulated from removal as directors for prior wrongful conduct, fiduciary breaches and other defalcations as a condition of honoring CCI's contractual obligations and otherwise protecting CCI's interests." Am. Compl. ¶ 65. In particular, the complaint alleges that Defendants failed to ensure that CCI satisfied its contractual obligations to numerous counterparties, including Zayas, Anthony, Zedia, Loopmas-

ters, and Plaintiff, *Id.* ¶¶ 29, 34, 40, 42, and that Defendants failed to maintain proper records or file tax returns since CCI's inception, *Id.* ¶¶ 35–37. The complaint alleges that the Board, which Defendants controlled, was aware of these failings yet took no steps to engage in effective oversight and, despite knowledge of Simmons' allegedly unlawful conduct, did nothing to prevent the diversion of corporate funds. *Id.* ¶¶ 46, 55, 65. These failings exposed CCI to potential fines and liability, *Id.* ¶¶ 37, 40, facilitated the unlawful diversion of corporate funds, *Id.* ¶¶ 46, 65, and "threatened the very viability of [CCI]," *Id.* ¶ 46. Plaintiff also alleges that Defendants acted with a motive of entrenchment in seeking to avoid liability and removal based on prior misconduct. *Id.* ¶¶ 44, 48–49. In support, the complaint cites (1) a draft of a revised shareholder agreement, which would insulate Simmons from removal, and (2) communications made to representatives for Zayas and Anthony, which proposed formalizing certain agreements in exchange for terms that would prevent Defendants from being removed from the Board for prior misconduct. *Id.;* Am. Compl. Ex A; Simmons Decl. Ex. 1.

The Court rejects Defendants' contention that these allegations amount to, at most, gross negligence. When directors have actual knowledge of illegal or improper conduct, the directors must take good faith steps to remedy the problem. *See In re Citigroup,* 964 A.2d at 123. Such knowledge has been alleged here. Plaintiff asserts that Defendants knew of CCI's numerous contractual failings and Simmons' alleged diversions of corporate funds but deliberately chose not to rectify the situation or protect stockholders from further harm. Am. Compl. ¶¶ 46, 53–55, 65. Even when confronted about the circumstances, Defendants took deliberate steps to insulate themselves from liability and refused demands to remove Simmons and

resign from the Board. *Id.* ¶¶ 57, 58; Am. Compl. Ex A; Simmons Decl. Ex. 1. The allegations of knowing and deliberate indifference to CCI's best interests "do more than portray directors who [acted] in a negligent or grossly negligent manner" and are sufficient to withstand a motion to dismiss. *In re Walt Disney,* 825 A.2d 275, 289–90 (Del.Ch.2003).

Read as a whole, the allegations in the complaint suggest, in sufficiently concrete terms, a pattern of misconduct and a conscious disregard for Defendants' directorial duties. These allegations go beyond conclusory or "naked assertion[s]" devoid of "further factual enhancement," *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, and are sufficient to show that Defendants abdicated their directorial duty, knowingly violated the duty of oversight, and improperly sought to entrench themselves on the Board.

## CONCLUSION

For the reasons stated above, Defendants' motion is DENIED.

Plaintiff is directed to email this order to Simmons at ccreate00@gmail.com, corey@clubcreate.com, and clubcreate@gmail.com.

SO ORDERED.